# In the

# United States Court of Appeals

## For the Seventh Circuit

——————

No. 04-1384

ROBERT H. TICE, *et al.*,

*Plaintiffs-Appellants*,

*v.*

AMERICAN AIRLINES, INC.,

*Defendant-Appellee.*

——————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 95 C 6890—**Matthew F. Kennelly**, *Judge.*

——————

SUBMITTED JUNE 14, 2004—DECIDED JUNE 29, 2004

——————

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiffs in this suit under the Age Discrimination in Employment Act are 14 American Airlines pilots who, having reached age 60 and thus become disqualified (by virtue of a regulation of the Federal Aviation Administration that is not challenged) to pilot the airline's planes, claim the right to downgrade to the position of flight officer. Some of American's aircraft have three pilots in the cockpit—the captain, the first officer (copilot), and the flight officer. The flight officer must ordinarily be a pilot, but his duties do not involve flying the airplane;

instead they involve monitoring the plane's fuel, electrical, and other systems. American refuses to permit a captain who has been disqualified as a pilot to downgrade to flight officer. The plaintiffs, all former captains, contend that this refusal violates the age discrimination law.

American replies that the refusal has nothing to do with age, but rather is compelled by its collective bargaining agreement with the plaintiffs' union, which establishes an "up or out" policy: a flight officer who cannot qualify for a higher position cannot remain in the cockpit. Because the flight officer's job is a kind of apprenticeship for actually flying the airplane, American wants the job filled by pilots eligible to progress to the flying positions. Although an eligible captain who downgrades is not an apprentice, his eligibility makes it likely that he will someday again be flying the aircraft and it therefore makes sense that he should stay in the cockpit rather than take a job on the ground; it will help him maintain his proficiency. The plaintiffs are ineligible to pilot the aircraft and so no purpose would be served by allowing them to be flight officers.

We ruled the last time this case was here that the question whether American was indeed compelled by the collective bargaining agreement to refuse to allow the plaintiffs to downgrade to flight officer would have to be referred to the arbitral machinery established by the Railway Labor Act, because that is the exclusive route for obtaining an authoritative interpretation of a collective bargaining agreement in the airline industry, *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 881 (9th Cir. 2002); *Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316 (7th Cir. 1999), and because the plaintiffs "have no possible age discrimination claim if it turns out that the collective bargaining agreement expressly or by implication makes *all* disqualified captains, regardless of age, ineligible

to become flight officers and is applied in a nondiscriminatory fashion in accordance with its terms." 288 F.3d 313, 314, 318 (7th Cir. 2002) (emphasis in original).

So the matter was referred to the relevant arbitral body, the System Board of Adjustment, which sided with American, ruling that the collective bargaining agreement indeed established the "up or out" policy that American said it did. On the basis of this ruling the district court dismissed the suit.

The appeal presents a scattershot of issues. The plaintiffs seem not to have heard of the doctrine of the law of the case, under which a ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it. *Pilch v. Ashcroft*, 353 F.3d 585 (7th Cir. 2003); *United States v. Noble*, 299 F.3d 907, 910 (7th Cir. 2002); *Alphamed, Inc. v. B. Braun Medical, Inc.*, 367 F.3d 1280, 1285-86 (4th Cir. 2004). The passage that we quoted from our previous opinion establishes as the law of this case that if the collective bargaining agreement creates a flat, age-neutral policy, neutrally enforced, forbidding captains to downgrade to flight officer, that is the end of the case. As our statement of the doctrine indicated, it is not hard and fast, and so a party is free to argue that an intervening change in law or other changed or special circumstance warrants a departure. E.g., *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988); *Pilch v. Ashcroft, supra*, 353 F.3d at 586-87; *Ellis v. United States*, 313 F.3d 636, 647-48 (1st Cir. 2002); *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999). But in failing to acknowledge the doctrine, the plaintiffs have also failed to try to fit this case to any exception to it.

Their only ground of appeal that the doctrine doesn't foreclose is that the arbitrators' purported interpretation of

the collective bargaining agreement was so wacky that it was no interpretation at all and thus exceeded the arbitrators' delegated power, which is limited to interpretation. As we explained in an earlier case involving review of an arbitration decision made under the authority of the Railway Labor Act, "a federal court is not authorized to set aside the arbitrator's award so long as the arbitrator interpreted the parties' contract." *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry.*, 768 F.2d 914, 921 (7th Cir. 1985); see also *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57, 62 (2000); *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 579 (7th Cir. 2001). The plaintiffs argue that the arbitrators could not have been engaged in interpretation because the collective bargaining agreement does not state that captains are forbidden to downbid to flight officer. But we had anticipated and rejected the argument in another passage in our previous opinion that became the law of the case: "[T]he agreement nowhere states in so many words that a permanently disqualified captain cannot bump a flight officer. But contracts, including collective bargaining agreements, frequently contain implied terms. *Chicago & North Western Transportation Co. v. Railway Labor Executives' Ass'n*, 908 F.2d 144, 154 (7th Cir. 1990) ('the practice had, in other words, ripened into a commitment, and thus had become a part of the collective bargaining agreement between the union and the railroad. Practices accompanied by assurances of continuation, express or implied but in either event likely to induce reliance, can create an implied obligation'). Whether a collective bargaining agreement contains such terms is a question of interpretation to be decided by arbitrators when arbitration is the designated method of resolving issues arising under the agreement. 'Contracts have implied as well as express terms, and the authority of an arbitrator to

interpret a collective bargaining contract includes the power to discover such terms.' " 288 F.3d at 316 (some citations omitted).

The System Board of Adjustment found that American had for many years followed the "up or out" practice, that the union had acquiesced, and that the practice had become an implied term of the parties' collective bargaining agreements. The plaintiffs challenge the correctness of this ruling, but we have no power to review an arbitral ruling for error. As long as what the arbitrators did can fairly be described as interpretation, our hands are tied. Since the interpretation of a collective bargaining agreement "includes the power to discover [implied] terms," and practices can through acquiescence by the parties "create an implied obligation," the arbitrators' conclusion that American's "up or out" policy was an implied term of the collective bargaining agreement was interpretive and therefore binds us.

AFFIRMED.


A true Copy:

Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*