In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2826

WILLIAM VIRAMONTES,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, JESSICA BRADY, AND MARC LAPADULA

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 6251 — **Virginia M. Kendall**, *Judge.*

ARGUED SEPTEMBER 13, 2016 — DECIDED OCTOBER 21, 2016

Before BAUER, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* William Viramontes was convicted in Illinois state court of aggravated assault and resisting arrest. Despite the conviction, Viramontes filed this § 1983 suit against the officers involved in the altercation alleging that they used excessive force in violation of his Fourth Amendment rights.

The jury returned a verdict for the officers. Viramontes sought a new trial for two reasons: (1) because the district court instructed the jury that it had to take as true the facts underlying the state-court conviction, and (2) because defense counsel made improper statements during closing argument. The district court denied the motion, holding that the jury instruction was proper and that, although defense counsel's statements during closing argument were improper, they did not warrant a new trial. We agree and affirm.

## I. BACKGROUND

Viramontes was charged with mob action, aggravated assault, and resisting arrest in Cook County Circuit Court arising out of an incident at a Puerto Rican street festival in Chicago. Following a bench trial, Viramontes was convicted of aggravated assault and resisting arrest. The state court judge held, "I find the Defendant guilty of resisting a police officer and aggravated assault in that he took a substantial step and actively swung in the direction of the police officer and missed," and that "after the Defendant swung … he did actively resist." (R. 58-3.) The court sentenced Viramontes to 100 days' imprisonment.

Viramontes then sued two officers involved in the arrest, Jessica Brady and Marc Lapadula, and the City of Chicago. Viramontes brought a § 1983 claim, alleging that the officers used excessive force during the arrest violating his Fourth Amendment rights.

After trial, the jury returned a verdict for the defendants on Viramontes's claims. Viramontes filed a Rule 59 motion for a new trial, arguing that attorney misconduct and procedural and evidentiary errors rendered the trial unfair. The

district court denied the motion. On appeal, Viramontes argues that an allegedly improper jury instruction and defense counsel's improper statements in closing argument entitle him to a new trial.

Because the § 1983 claim involved the same incident for which Viramontes had been convicted of aggravated assault and resisting arrest, the claim implicated the Supreme Court's decision in *Heck v. Humphrey*. There, the Court held that a plaintiff's § 1983 claim is barred if it "necessarily impl[ies] the invalidity of his conviction." 512 U.S. 477, 487 (1994). The district court relied on our decision in *Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008) and held that an excessive-force claim was not inconsistent with Viramontes's conviction. The district court also held, however, that the facts underlying the conviction had to be taken as true. Before trial and over Viramontes's objection, the district court read the following jury instruction:

> Mr. Viramontes actively swung in the direction of a police officer and missed. After he swung, Mr. Viramontes actively resisted the police officer. Any statements to the contrary by Mr. Viramontes, his lawyers, or a witness must be ignored. What you need to determine is whether the officers used more force than was reasonably necessary under the circumstances and whether the officers maliciously prosecuted Mr. Viramontes for mob action. Although during the trial you must accept that Mr. Viramontes swung in the direction of a police officer and missed, you must also decide whether the testimony of each of the witnesses is truthful and accurate in part, in whole, or not at all. You should give fair and equal consideration to all the evidence

> because you are the impartial judges of all of the
> facts.

(R. 97 at 20–21.) The court read the instruction before and after the parties presented evidence. During trial, the court reread the instruction when it believed testimony contradicted Viramontes's conviction. Of importance here, the district court stopped Officer Lapadula from answering whether he testified at the criminal trial that Viramontes had pulled away after swinging (as the state court found) or that Viramontes had pulled away and then swung. The court told Viramontes that he was "not permitted to directly examine in contradiction" of the state court's findings. (R. 98 at 124.)

Additionally, two district court orders are relevant to Viramontes's appeal. First, the district court denied Viramontes's motion to bar reference to prior convictions, allowing the defendants to use Viramontes's 2012 felony conviction for impeachment purposes only. Second, the district court granted Viramontes's motion *in limine* to bar evidence bolstering the officers' character. In closing argument, however, defense counsel disobeyed the district court's orders. Defense counsel used the 2012 felony conviction to make a propensity argument when he argued that the felony "conviction reflects on Mr. Viramontes' unwillingness to conform his conduct to the law." (R. 99 at 40.) Defense counsel also claimed that the officers were "stars" and "outstanding police officers." (R. 99 at 61.) Viramontes objected immediately to the remarks. The district court sustained both objections and instructed the jury that statements made during closing argument were not evidence.

## II. ANALYSIS

Viramontes appeals the district court's denial of his motion for a new trial on two grounds. First, Viramontes argues that the *Gilbert* instruction was unlawful and prejudiced him in three ways: (1) the instruction reflected the state court's factual findings instead of the criminal complaint, (2) the instruction was read before he contradicted his conviction, and (3) the district court inappropriately used the instruction to prevent him from impeaching Officer Lapadula. Second, Viramontes argues that defense counsel's improper comments during closing argument denied him his right to a fair trial. We take those claims in turn.

### A. The Gilbert *Instruction*

In *Heck*, the Supreme Court held that a plaintiff seeking damages under § 1983 cannot recover if judgment in the plaintiff's favor would "necessarily imply the invalidity" of a criminal conviction. 512 U.S. at 487. This court has held that a plaintiff's conviction for assaulting a police officer does not "necessarily imply" that the officer used appropriate force during the course of arrest after the assault. *Gilbert*, 512 F.3d at 901. A subsequent excessive-force claim may, however, imply the invalidity of a conviction if the plaintiff attempts to testify in a way that contradicts the conviction's factual basis. To balance this tension, we held in *Gilbert* that the district court should implement *Heck* by instructing the jury that it must take as true the facts proved at the earlier criminal or disciplinary proceeding. *Id.* at 902. The district court gave this exact instruction.

This court reviews jury instructions "de novo when the underlying assignment of error implicates a question of

law." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, No. 15-2526, 2016 WL 4097439, at *14 (7th Cir. Aug. 2, 2016) (citing *United States v. Macedo*, 406 F.3d 778, 787 (7th Cir. 2005). We give the district court "substantial discretion with respect to the precise wording of instructions so long as the final result, read as a whole, completely and correctly states the law." *Saathoff v. Davis*, 826 F.3d 925, 932 (7th Cir. 2016) (internal quotation marks omitted); *see also Brown v. Smith*, 827 F.3d 609, 614 (7th Cir. 2016) ("We review a district court's decisions on jury instructions for abuse of discretion."). Reversal due to an improper jury instruction is warranted only if the "instruction misstates the law in a way that misguides the jury to the extent that the complaining party suffered prejudice." *Brown*, 827 F.3d at 614.

### 1. Content

Viramontes argues that the district court erred in crafting the jury instruction because it relied on the state court's factual findings instead of the criminal complaint. We disagree.

*Gilbert* itself belies Viramontes's argument. There, the court referred to the prison disciplinary board's finding that the plaintiff had delivered the first punch in the fight between the plaintiff and the prison guards. 512 F.3d at 902. The *Gilbert* court's proposed jury instruction was not limited to the complaint filed with the disciplinary board but instead mirrored the disciplinary board's factual findings. *Id.* at 900.

That principle has since been entrenched in our case law. In *Helman v. Duhaime*, we held that, when considering whether *Heck* bars a § 1983 claim, "we must consider the *factual basis* of the claim and determine whether it necessarily implies the invalidity of [the] conviction." 742 F.3d 760, 762

(7th Cir. 2014) (emphasis added). "[T]he plaintiff can only proceed to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." *Id.* (citing *Evans v. Poskon*, 603 F.3d 362, 363–64 (7th Cir. 2010)). In *Moore v. Mahone*, this court held that the plaintiff's § 1983 suit was barred by *Heck* because the allegations were "in tension with the disciplinary board's findings." 652 F.3d 722, 724–25 (7th Cir. 2011).

In fact, at no point has our focus been on the words used in the actual criminal or disciplinary complaint. Even our *Heck* analysis in decisions that predate *Gilbert* focused on facts and not on the formalistic language in the original complaint. *See VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (holding that the plaintiff's § 1983 suit was not barred by *Heck* in part because it didn't "challenge the factual basis presented at his change of plea hearing"); *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) ("[A] plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction … ."); *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that he disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit.").

Here, the state court held that Viramontes was guilty of aggravated assault because "he took a substantial step and actively swung in the direction of the police officer and missed." (R. 58-3.) The state court also concluded that Viramontes was guilty of resisting arrest because "after the Defendant swung … he did actively resist." (*Id.*) The jury in-

struction the district court gave—that "Mr. Viramontes ac-tively swung in the direction of a police officer and missed. After he swung, Mr. Viramontes actively resisted the police officer."—was consistent with the state court's findings. (R. 97 at 20.) Consequently, the jury instruction's content was appropriate.

*2. Timing*

Viramontes next argues that the district court should not have read the instruction until he contradicted his convic-tion. We disagree.

First, we expressly stated in *Gilbert* that an instruction could be read to the jury "at the start of trial, as necessary during the evidence, and at the close of the evidence." 512 F.3d at 902. The district court did exactly what we stated dis-trict courts should do and thus did not err.

Despite the plain language in *Gilbert*, Viramontes argues that this case is distinguishable because the court in *Gilbert* was faced with a plaintiff who "encountered difficulty ad-hering to an agnostic posture on" the disciplinary board's factual findings. 512 F.3d at 902. Viramontes argues, then, that no instruction should be given until a defendant contra-dicts a prior conviction. Although Viramontes correctly ar-ticulates the factual situation in *Gilbert*, we decline to adopt his narrow interpretation of the rule. In most cases, a district court judge won't know before trial whether a plaintiff will remain agnostic about a prior conviction. Indeed, before tri-al, all plaintiffs must claim to remain agnostic in order to have their day in court. *See Evans*, 603 F.3d at 364 (stating that "a plaintiff is master of his claim and can, if he insists, stick to a position that forecloses relief"). Waiting to instruct

the jury to take certain facts as true until the plaintiff claims innocence or disputes the conviction's factual basis might confuse the jury. An instruction before the presentation of evidence solves this potential problem—the jury knows upfront that it must decide all facts except for the facts already stipulated.

Even if the rule was not as plain as we make it here, the district court's decision would still withstand scrutiny because Viramontes proved that he could not remain agnostic about his conviction. Viramontes claimed in his deposition that he never tried to hit Officer Lapadula, a claim that directly contradicts his conviction. Further, at trial, Viramontes testified that he "never resisted" (R. 97 at 103) and was "innocent" (R. 97 at 120). Far from remaining agnostic, Viramontes's conduct makes clear why a *Gilbert* instruction is necessary in these cases.

Because the district court was within its discretion to give the *Gilbert* instruction at the beginning of trial, the timing of the instruction was appropriate.

*3. Use*

During the presentation of evidence, the district court read the *Gilbert* instruction multiple times when it believed that testimony contradicted Viramontes's conviction. Viramontes objects to one of those times. At trial, Viramontes sought to get Officer Lapadula to testify that at the criminal trial he said Viramontes resisted arrest and then swung, not vice versa. The district court stopped Officer Lapadula from answering based on the *Gilbert* instruction that stipulated that Viramontes had swung and then resisted arrest. Viramontes now claims that he should have been able to "ar-

gue this contradiction" between the conviction and Officer Lapadula's testimony and to impeach Officer Lapadula for inconsistencies in his testimony.

A district court's evidentiary decisions are reviewed for an abuse of discretion. *Nelson v. City of Chicago*, 810 F.3d 1061, 1066 (7th Cir. 2016). We will not reverse a jury verdict unless the district court's error affected the objecting party's substantial rights. *Id.*; *Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2013). An error affects substantial rights only if there is a "significant chance" that the ruling affected the trial's outcome. *Nelson*, 810 F.3d at 1066 (quoting *Maurer v. Speedway, LLC*, 774 F.3d 1132, 1135 (7th Cir. 2014)). We will not reverse if the error is harmless in light of the trial record as a whole. *Nelson*, 810 F.3d at 1066; *Barber*, 725 F.3d at 715.

First, the district court did not err in denying Viramontes the chance to argue a contradiction between Officer Lapadula's testimony and the state court's factual findings. Specifically, Viramontes wanted to argue that "[r]egardless of the extent, or even direction, that Plaintiff's fist moved, he did so after the defendants touched his person; he resisted then swung—not swung and then resisted." (Appellant's Br. at 12.) Fair enough, Viramontes might believe that to be the sequence of events. But that sequence directly contradicts his conviction. Consequently, that argument would violate *Heck* and thus the district court did not err.

Second, the district court erred in preventing Viramontes from impeaching Officer Lapadula based on inconsistent testimony. The district court was correct in its pretrial ruling: *Heck* prevents plaintiffs from implying the invalidity of a conviction; it does not bar a plaintiff from impeaching a witness based on inconsistent testimony across trials. Impeach-

ment evidence is used to impugn a witness's reliability, not to prove the truth of the matter asserted. *United States v. Burt*, 495 F.3d 733, 736–37 (7th Cir. 2007). Thus, even though Viramontes could not challenge the state court's factual findings, he should have been allowed to argue that Officer Lapadula was not a reliable witness because his testimony had changed over time.

The district court's error, however, was harmless. Despite Viramontes's argument to the contrary, Officer Lapadula's testimony at the criminal trial was consistent with the state court's factual findings. Viramontes alleges that Officer Lapadula testified that Viramontes resisted arrest and then swung at him, not that Viramontes swung and then resisted arrest as the state court found. The Illinois Appellate Court's decision affirming the state court conviction stated that "both officers testified that after they took defendant down to the ground and attempted to handcuff him, defendant continued moving his body and arms, and tried to get away from them." *People v. Viramontes*, 2013 IL App (1st) 123014-U, ¶ 16. Any attempt to impeach Officer Lapadula would have been rebutted by the fact that he did testify that Viramontes resisted arrest after swinging at him. In fact, both officers testified that Viramontes continued to resist arrest after he swung at Officer Lapadula.

There is not a substantial likelihood that the jury's analysis would have been any different than it was because Officer Lapadula's testimony was consistent. *United States v. Miller*, 688 F.3d 322, 329 (7th Cir. 2012) ("The test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been significantly less persuasive had the improper evidence been excluded." (quoting

*United States v. Loughry*, 660 F.3d 965, 975 (7th Cir. 2011)).
Thus, the error was harmless.

*B. Defense Counsel's Improper Comments*

We turn to Viramontes's argument that defense counsel's
improper statements during closing argument denied him
his right to a fair trial. Defense counsel stated that Vi-
ramontes's 2012 felony conviction reflected his "unwilling-
ness to conform his conduct to the law." Defense counsel al-
so attempted to bolster the officers' character and credibility
by calling them "stars" and "outstanding officers." Appel-
lants admit that the statements were improper but argue that
the district court did not abuse its discretion in denying Vi-
ramontes's motion for a new trial. We agree.

A district court's ruling on a Rule 59 motion for a new tri-
al is reviewed for an abuse of discretion. *Empress Casino*,
2016 WL 4097439, at *13. Parties seeking a new trial based on
counsel's improper comments must show that "misconduct
occurred and that it prejudiced their case." *Christmas v. City
of Chicago*, 682 F.3d 632, 642 (7th Cir. 2012); *see also Smith v.
Hunt*, 707 F.3d 803, 812 (7th Cir. 2013). We give great defer-
ence to the district court's ruling because the district court is
in the best position to evaluate improper conduct in light of
the trial and determine whether it caused prejudice. *Christ-
mas*, 682 F.3d at 642–43.

Defense counsel's comments were plainly improper. That
propensity arguments are improper is basic hornbook evi-
dence law. Fed. R. Evid. 404(b)(1); *United States v. Gomez*, 763
F.3d 845, 855 (7th Cir. 2014). The statements concerning the
officers' character were also improper—the district court ex-
plicitly ruled before trial that these comments were prohibit-

ed. The impropriety of the comments notwithstanding, we cannot conclude that the statements prejudiced Viramontes. Improper comments during closing argument rarely constitute reversible error. *Smith*, 707 F.3d at 812; *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 388 (7th Cir. 2011).

Viramontes objected immediately to the propensity argument and to the comment that the officers were "stars." The district court sustained those objections. When improper comments are objected to and the district court sustains the objection, the comments are less likely to require reversal. *See Smith*, 707 F.3d at 812; *Christmas*, 682 F.3d at 643. Moreover, the district court instructed the jury twice, once before closing argument and once after, that attorneys' statements during closing argument are not evidence. "There is a longstanding presumption that 'curative instructions to the jury mitigate harm that may otherwise result from improper comments' during closing argument." *Smith*, 707 F.3d at 812 (citing *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 388 (7th Cir. 2011)); *see also Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008) ("We presume that juries follow the instructions given them by the court."). Finally, the statements were brief and did not represent a substantial part of defense counsel's closing statement. *Banister v. Burton*, 636 F.3d 828, 834 (7th Cir. 2011) (holding that brief and unrepeated improper statements at closing are unlikely to rise to the level of reversible error).

Because the improper comments were made in closing argument, objections to the statements were sustained, the district court gave a curative instruction, and the statements were brief, the district court did not abuse its discretion denying the motion for a new trial.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Viramontes's motion for a new trial.

HAMILTON, *Circuit Judge*, concurring. I join Judge Kanne's opinion for the court, including the holding that the district judge did not abuse her discretion by denying a new trial on the basis of the defendants' lawyer's misconduct in closing argument. I write separately to emphasize how important our standard of review is on that issue.

The defendants' lawyer said in closing argument that plaintiff's 2012 felony conviction for unlawful use of a weapon "reflects on Mr. Viramontes' unwillingness to conform his conduct to the law." The admissibility of the conviction had been the subject of a pretrial motion in limine and order by the district court limiting its use to references only to "a felony conviction," without explanation, based on the permissible purpose (as defense counsel had argued to the court) of impeaching credibility under Federal Rule of Evidence 609. The defense brief to the district court on the motion in limine shows that counsel fully understood the difference between proper and improper use of the conviction, as should any lawyer who has passed an introductory evidence class. It is difficult to see this misconduct during closing argument as anything other than a deliberate harpoon, in flagrant violation of Rule 609 and the judge's order in limine. The defendants make no effort on appeal to justify the misconduct. They ask only that we not order a new trial.

As the court explains, the appropriate response to such misconduct during trial is left to the sound discretion of the district judge. In this case, Judge Kendall's response was toward the gentler end of the spectrum of reasonable responses. It is important to recognize that a much stronger response was also within the judge's discretion. For example, the trial judge might have granted a new trial and ordered the offending

party to pay the court and opposing party for the additional costs of a new trial. I would also have found such a response within the judge's discretion.