In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2956

REGINALD PITTMAN, by and through his guardian and next friend, ROBIN M. HAMILTON,

*Plaintiff-Appellant*,

*v.*

COUNTY OF MADISON, ILLINOIS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois
No. 3:08-cv-00890-SMY-DGW — **Staci M. Yandle**, *Judge.*

ARGUED MAY 18, 2020 — DECIDED AUGUST 14, 2020

Before WOOD, BARRETT, and SCUDDER, *Circuit Judges.*

BARRETT, *Circuit Judge.* Reginald Pittman attempted suicide at the Madison County jail in 2007. Although the attempt failed, it left him in a vegetative state. Through his guardian, Pittman filed this § 1983 suit against Madison County and then-Madison County jail employees, Sergeant Randy Eaton and Deputy Matthew Werner, alleging that they violated the

Fourteenth Amendment by failing to provide him with adequate medical care. In 2018, the suit went to trial for the second time, and the jury returned a verdict in favor of the defendants. We reverse the district court's denial of Pittman's motion for a new trial and remand because we conclude that one of the jury instructions erroneously directed the jury to evaluate Pittman's Fourteenth Amendment claim according to a subjective rather than objective standard.

I.

In 2007, Reginald Pittman was a pretrial detainee at the Madison County jail. At the time, Sergeant Randy Eaton and Deputy Matthew Werner were employees of the county jail. After four months of detention, Pittman attempted suicide by hanging himself with a blanket. The suicide attempt left Pittman in a vegetative state. In his suicide note, he stated that the guards were "f***ing" with him and would not give him access to "crisis [counseling]."

After Pittman's suicide attempt, Bradley Banovz, an inmate housed near Pittman's cell, substantiated the claim that Pittman had made in his suicide note. In an interview with a county detective, which was captured on video, Banovz stated that in the days leading up to Pittman's suicide attempt, Pittman had asked both Werner and Eaton to refer him to crisis counseling. According to Banovz, while both defendants promised Pittman that they would schedule him for counseling, neither of them followed through with their promises.

Pittman filed a § 1983 suit against Madison County, Werner, and Eaton. As is relevant on this appeal, Pittman claimed that the defendants violated the Due Process Clause of the

Fourteenth Amendment by failing to provide him with adequate medical care. The defendants moved for summary judgment, which was granted in 2011. We reversed and remanded the suit. *Pittman ex rel. Hamilton v. Cnty. of Madison* (*Pittman I*), 746 F.3d 766 (7th Cir. 2014). On remand, the parties went to trial for the first time, which resulted in a jury verdict in favor of the defendants in 2015. Pittman appealed again. Among other things, he challenged the district court's exclusion of Banovz's video interview. We concluded that the district court's exclusion of the video interview was a reversible error and remanded for a new trial. *Pittman ex rel. Hamilton v. Cnty. of Madison* (*Pittman II*), 863 F.3d 734 (7th Cir. 2017).

In 2018, the case went to trial for the second time. Once again, the jury returned a verdict for the defendants. Pittman filed a motion for a new trial, which was denied. On what is now his third appeal, Pittman challenges one of the jury instructions and two evidentiary rulings by the district court.

## II.

Pittman's principal challenge on appeal concerns a pivotal jury instruction.[1] According to Pittman, the instruction misstated the law: instead of requiring the jury to determine

---

[1] The defendants argue that Pittman did not preserve this challenge because his objection to the jury instruction was neither timely nor sufficiently specific under Federal Rule of Civil Procedure 51. *See Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002) (noting that to preserve an objection to a jury instruction under Rule 51, the objection must be timely and must "distinctly state the matter objected to and the ground of the objection"). We're wholly unconvinced by this argument. As for the timing, the record indicates that Pittman raised his objection early enough in the proceedings to give the district court the opportunity to review his objection before instructing the jury. *See id.* at 729–30 ("There are no formal requirements [for the timing of the objection], but pragmatically speaking

whether the defendants acted in an objectively reasonable manner, the instruction required the jury to ascertain the defendants' subjective intent. We decide de novo whether a jury instruction misstated the law, but even if it did, we will reverse only if the misstatement "misguide[d] the jury to the extent that the complaining party suffered prejudice." *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016) (citation omitted).

The challenged jury instruction required the jury to make four findings: (1) "[t]here was a strong likelihood that [Pittman] would seriously harm himself," (2) the defendants "were aware of … or strongly suspected facts showing [this] strong likelihood," (3) they "consciously failed to take reasonable measures to prevent [Pittman] from harming himself," and (4) Pittman "would have suffered less harm if [the defendants] had not disregarded the risk." Pittman argues that the instruction is inconsistent with the objectively reasonable standard that we recently articulated in *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018).

Before *Miranda*, this circuit evaluated a Fourteenth Amendment due process claim brought by a pretrial detainee under the deliberate indifference standard, which "requires a showing that the defendant had a 'sufficiently culpable state

---

the district court must be made aware of the error prior to instructing the jury, so that the judge can fix the problem before the case goes to the jury."). Moreover, the record shows that Pittman identified the alleged error in the jury instruction with sufficient specificity by arguing that the instruction did not comply with the newly articulated objective standard in *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018). Thus, the objection was "sufficiently detailed to draw the court's attention to the defect." *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1295 (7th Cir. 1987). Pittman preserved his challenge for appeal.

of mind' and asks whether the official actually believed there was a significant risk of harm." *Id*. at 350 (citation omitted). This standard tracked the subjective inquiry employed for Eighth Amendment claims—and that made it a misfit. "Pretrial detainees stand in a different position" than convicted prisoners, so "the punishment model is inappropriate for them." *Id*. Moreover, our approach was undercut by the Supreme Court's decision in *Kingsley v. Hendrickson,* which held that an excessive-force claim brought by a pretrial detainee under the Fourteenth Amendment must be evaluated under an objective test rather than the subjective deliberate indifference standard. 135 S. Ct. 2466, 2473 (2015). So in *Miranda*, we changed course. Taking our cue from *Kingsley*, we held that an objective standard applies to medical-needs claims brought by pretrial detainees such as the one brought by Pittman. 900 F.3d at 352. Under this standard, the jury must answer two questions. First, it must decide whether the "defendants acted purposefully, knowingly, or perhaps even recklessly." *Id.* at 353. Second, it must determine whether the defendants' actions were "objectively reasonable." *Id.* at 354.

Pittman argues that the jury instruction conflicts with this test because the jury was told to consider whether the defendants "*were aware of … or strongly suspected*" facts showing a likelihood that Pittman would harm himself and whether the defendants "*consciously* failed to take reasonable measures" to avert that harm. (emphasis added). According to Pittman, this language directed the jury to apply the now-defunct subjective test rather than the objective test that governs under *Miranda*.

Pittman's argument fails as to the instruction that the jury decide whether the defendants "were aware of … or strongly

suspected facts showing" a strong likelihood that Pittman would harm himself. This language goes to *Miranda*'s first inquiry: whether the defendants acted "purposefully, knowingly, or perhaps even recklessly." At bottom, *Miranda*'s first inquiry encompasses all states of mind except for negligence and gross negligence. *Miranda*, 900 F.3d at 353. The challenged language accurately conveyed this standard to the jury: if the defendants "were aware" that their actions would be harmful, then they acted "purposefully" or "knowingly"; if they were not necessarily "aware" but nevertheless "strongly suspected" that their actions would lead to harmful results, then they acted "recklessly." This much is consistent with *Miranda*.

But the district court erred by telling the jury to determine whether the defendants "*consciously* failed to take reasonable measures to prevent [Pittman] from harming himself." (emphasis added). This language conflicts with *Miranda*'s second inquiry: whether the defendants acted in an "objectively reasonable" manner. By using the word "consciously," the instruction erroneously introduced a subjective element into the inquiry. Under *Miranda*'s standard, whether the defendants' failure to take reasonable measures was the result of a *conscious* decision is irrelevant; they are liable if their actions (or lack thereof) were *objectively* unreasonable. *See Kingsley,* 135 S. Ct. at 2470 (holding that the plaintiff's Fourteenth Amendment excessive-force claim turned on whether the defendants' conduct was "*objectively* unreasonable" rather than on whether the defendants were "*subjectively* aware" that that their conduct was unreasonable). Because the word "consciously" rendered the jury instruction impermissibly subjective, the jury instruction misstated the law.

This error likely "confused or misled" the jury. *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004). Although the word "consciously" is the only aspect of the instruction that conflicts with *Miranda*, we consider "the instructions as a whole, along with all of the evidence and arguments." *Susan Wakeen Doll Co. v. Ashton-Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001). Here, the evidence and arguments presented at trial by both Pittman and the defendants reveal that the word "consciously" was likely prejudicial. Pittman presented the transcript of Banovz's video interview to convince the jury that the defendants ignored Pittman's multiple requests for crisis counseling. For their part, the defendants sought to avoid liability by arguing that, despite knowing that Pittman had been placed on suicide watch a few months before his suicide attempt and had an episode of extensive crying around the same time, they were nevertheless unaware of the actual risk that Pittman posed to himself. They supported this argument by testifying, among other things, that they were not familiar with the jail's suicide-prevention policies, were not able to identify suicide risks, and could not remember whether they had been trained on handling suicidal inmates. In other words, the defendants argued and presented evidence to show that they did not *consciously* fail to take reasonable measures to prevent Pittman's suicide attempt. In light of the evidence presented at trial and the arguments made by the defendants, the use of the word "consciously" likely steered the jury toward the subjective deliberate indifference standard. And that error "likely made [a] difference in the outcome," *Guzman v. City of Chicago*, 689 F.3d 740, 745 (7th Cir. 2012), because a reasonable jury could conclude that the defendants' failure to provide medical care for Pittman was ob-

jectively unreasonable, but not a conscious failure. In sum, because the jury instruction misstated *Miranda*'s objective standard and the error was likely prejudicial, we reverse the judgment and remand the case for a new trial.

## III.

Pittman also challenges two of the district court's evidentiary rulings: one barring any witness testimony as to whether the defendants acted in a "deliberately indifferent" manner and another excluding Banovz's testimony that he notified unnamed guards that Pittman was suicidal. "'We review [the] district court's rulings on [the] motions in limine for an abuse of discretion' because 'decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court.'" *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009) (alterations in original) (citation omitted). We conclude that neither ruling amounted to an abuse of discretion.

## A.

Pittman's first challenge pertains to the district court's grant of the defendants' motion in limine to bar witnesses from testifying that the defendants were "deliberately indifferent" toward him. Before we dive into the merits of this challenge, we must first address the defendants' contention that Pittman failed to preserve it. Relying on this circuit's ruling in *Jenkins v. Keating*, the defendants argue that Pittman forfeited this challenge by failing to renew his objection to the pretrial evidentiary ruling at some point during the trial. 147 F.3d 577, 581 (7th Cir. 1998) ("[I]n order to preserve for appeal the merits of a pre-trial ruling on a motion *in limine*, the party who unsuccessfully opposes the motion must accept the

court's invitation to renew his or her challenge to it at trial."). The defendants' reliance on *Jenkins* is misplaced, however, because that case turned on the district court's stated willingness to reconsider its pretrial ruling. By contrast, if a pretrial ruling is definitive, the objecting party need not renew his objection to it. FED. R. EVID. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."); *see also Wilson v. Williams*, 182 F.3d 562, 563 (7th Cir. 1999) ("[A] definitive ruling *in limine* preserves an issue for appellate review, without the need for later objection … .").

In this case, the district court gave the parties no reason to believe that its grant of the defendants' motion in limine was anything but definitive. Although the order contains little analysis, it makes clear that granting such a motion is warranted only if "the evidence is *clearly inadmissible* on all potential grounds." (emphasis added). And the order contains no conditional language other than a passing boilerplate reference to the fact that a ruling on a motion in limine is "subject to change." Notably, unlike the district court in *Jenkins*, the district court in this case did not invite Pittman to renew his challenge at any point during the trial. 147 F.3d at 586; *see also United States v. Addo*, 989 F.2d 238, 242 (7th Cir. 1993) (holding that a party abandons an objection if he fails to accept the district court's invitation to renew his objection during trial). Because the pretrial ruling was definitive, Pittman did not have to renew his objection at trial to preserve it.

Securing review of his argument, however, is as far as Pittman gets because the district court's ruling survives scrutiny. Admittedly, the district court's reasoning was

flawed. It asserted that allowing any witness to testify that the defendants were "deliberately indifferent" toward Pittman would violate Federal Rules of Evidence 701, 702, and 704, which together prohibit lay and expert witnesses from offering outcome-determinative opinions. *See* FED. R. EVID. 701 (setting forth the rule regarding lay witness testimony); FED. R. EVID. 702 (expert witness testimony); FED. R. EVID. 704 (testimony regarding an ultimate issue). That's wrong; under Rule 704(a), "[a]n opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a). But this mistake does not undercut the district court's decision to exclude the testimony because its decision is easily justified. "Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time." FED. R. EVID. 704(a) advisory committee's notes to 1972 Proposed Rules; *see also* FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). In light of *Miranda*, any testimony about the defendants' alleged "deliberate indifference" was far more likely to confuse the jury than to help it. *See McCann v. Ogle Cnty.*, 909 F.3d 881, 886 (7th Cir. 2018) (explaining that under *Miranda*, "a standard of objective reasonableness, and *not deliberate indifference*, governs claims under the Fourteenth Amendment's Due Process Clause for inadequate medical care provided to pretrial detainees" (emphasis added)). Excluding the testimony, therefore, was an eminently reasonable choice. *See Smith v. Hunt*, 707 F.3d 803, 807–08 (7th Cir. 2013) ("A decision is an abuse of discretion only if 'no

reasonable person would agree with the decision made by the trial court.'" (citation omitted)).[2]

### B.

Pittman also argues that the district court was wrong to exclude Banovz's testimony that he had notified unnamed guards that Pittman was suicidal. We can dispose of this contention succinctly because we already rejected it in Pittman's last appeal. The district court's decision to exclude Banovz's testimony as to the unnamed guards was among the various rulings before us in *Pittman II*. Although we remanded for a new trial because we concluded that the district court's exclusion of the Banovz's video interview was an abuse of discretion, we expressly rejected all of Pittman's other challenges. *See Pittman II*, 863 F.3d at 738 ("Pittman's brief raises several other issues relating to how the judge conducted the trial. None of these arguments has merit."). Pittman gives us no reason to depart from our previous ruling on this issue, so we affirm the district court's grant of the defendants' motion. *Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 853 (7th Cir. 2004) ("[A] ruling made in an earlier phase of a litigation controls the later phases unless a good reason is shown to depart from it.").

---

[2] Pittman also argues that the exclusion was improper because the parties had signed a written stipulation prior to the second trial, agreeing that the testimony of any witness who testified at the first trial could be presented to the jury without further foundation or authentication. This argument is likewise unpersuasive. As we've explained, the district court's decision to bar witnesses from testifying that the defendants were deliberately indifferent toward Pittman was proper for reasons other than foundation or authentication.

* * *

Although we find no error in the district court's evidentiary rulings, the erroneous jury instruction requires us to REVERSE the district court's judgment and REMAND for a new trial.